Duane A. DEBEJIAN, Plaintiff,

v.

**ATLANTIC TESTING
LABORATORIES, LIMITED,**
Defendant.

No. 98–CV–1752.

United States District Court,
N.D. New York.

Aug. 27, 1999.

Satter, Andrews Law Firm, Syracuse, NY, for plaintiff, Ross P. Andrews, of counsel.

Menter, Rudin Law Firm, Syracuse, NY, for defendant, Robert Silkey, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Duane A. DeBejian commenced the instant litigation against Defendant Atlantic Testing Laboratories, Ltd. ("ATL") pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201, *et. seq.* claiming that he did not receive overtime compensation (that is, for those hours worked in excess of forty per week). Presently before the Court is plaintiff's motion for partial summary judgment pursuant to FED.R.CIV.P. 56, seeking a determination that: (1) ATL is liable under the FSLA; (2) plaintiff is entitled to liquidated damages; and (3) the FLSA's statute of limitations should be extended from two to three years.

## I. BACKGROUND

Because plaintiff has moved for summary judgment, the following facts are presented in the light most favorable to defendant. *See Ertman v. United States,* 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff was hired by ATL on or about December 5, 1995 as a Non–Destructive Testing Technician ("NDT Tech") at a salary of $442.31 per week. Non-destructive testing involves the on-site inspection and testing of steel to determine whether it conforms to industry and/or project standards. An NDT Tech travels to the testing site and employs various tools to test the steel. The NDT Tech then compares the results of his tests to industry or project standards. Finally, the NDT Tech prepares a report outlining the results of the testing.

To qualify as an NDT Tech, one needs a high school diploma, or its equivalent, with specific NDT training. Although ATL preferred individuals with a two-year degree, it would accept persons with a high school education who also had experience.

On October 8, 1997, plaintiff was promoted to the position of Non–Destructive Testing Assistant Project Manager ("Assistant Project Manager"), and his salary was increased to $490.39 per week. The qualification for this position was experience as an NDT Tech. In fact, the majority of plaintiff's time as an Assistant Project Manager was spent performing the same tasks he did as an NDT Tech. However, as an Assistant Project Manager, plaintiff had additional responsibilities including "project management and technical supervision . . . scheduling responsibilities for [his] projects and . . . time . . .

[and] project financial management." Pl. Ex. G. According to ATL, plaintiff also was responsible for marketing and project profitability and would review contract specifications, job specifications and assist in hiring.

Plaintiff alleges in his Complaint that he was a nonexempt employee and was denied overtime compensation due to him.

Presently before the Court is plaintiff's motion pursuant to Fed.R.Civ.P. 56 seeking judgment as a matter of law that: (1) ATL violated the FLSA; (2) plaintiff is entitled to liquidated damages; and (3) a three-year statute of limitations applies.

## II. DISCUSSION

### A. Summary Judgment Standard

The standard for summary judgment is well-settled and need not be restated here. This Court has set forth the appropriate standard to be applied in numerous published decisions, *see Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232 (N.D.N.Y. 1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551, 556 (N.D.N.Y. 1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999), and will apply the same standards discussed in those cases to plaintiff's motion for partial summary judgment.

### B. Whether Plaintiff is an Exempt Employee[1]

The crux of this case focuses on the applicability of 29 U.S.C. § 207 and the exceptions found at 29 U.S.C. § 213(a)(1) for "employees employed in a bona fide

1. In his Complaint, Plaintiff alleges violations of federal and state law. Plaintiff contends, and ATL does not dispute, that the standards under the New York Labor Law, 12 N.Y.C.R.R. Part 142, are similar to that under the FLSA and, thus, that reference to the federal case law applying the federal regulations is appropriate. Indeed, neither party cited any New York cases in their briefs, and do not otherwise discuss New York State law.

Review of New York State regulations at 12 N.Y.C.R.R. Part 142 reveals that they are substantially similar to the federal scheme. *See* 12 N.Y.C.R.R. § 142–2.2; 142–2.16; *see also Scott Wetzel Servs., Inc. v. New York State Bd. of Indus. Appeals,* 252 A.D.2d 212, 213, 682 N.Y.S.2d 304 (3d Dep't 1998). Accordingly, the ensuing analysis focuses solely on federal law, but applies equally to Plaintiff's claims under the FLSA and New York State law.

executive, administrative, or professional capacity."

■ Pursuant to § 207:

no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

As noted, however, § 207 is inapplicable to "any employee employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited ... by regulations of the Secretary [of Labor]." 29 U.S.C. § 213(a)(1). Whether an exception applies to the FLSA is an affirmative defense on which the employer has the burden of proof. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Freeman v. National Broad. Co., Inc.,* 80 F.3d 78, 82 (2d Cir.1996). The exemptions are narrowly construed and the employer must show that the employee fits "plainly and unmistakenly within [the exception's] terms." *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). An employee qualifies for such an exemption if the he satisfies a "duties" test and is paid on a "salary basis." *See* 29 C.F.R. §§ 541.1 (Executive); 541.2 (Administrative); 541.3 (Professional); *see also Kelly v. City of Mount Vernon,* 162 F.3d 765, 766 (2d Cir. 1998).

Here, ATL contends that plaintiff qualifies as a bona fide professional.[2] Because plaintiff earned in excess of $250.00 per week, to prove that plaintiff falls within this exception, ATL must prove: (1) that plaintiff was compensated on a salary basis; (2) that his primary duty consists of the "performance of work requiring knowledge of an advanced type in a field of science or learning"; and (3) that plaintiff's responsibilities also include "work requiring the consistent exercise of discretion and judgment." *See Piscione v. Ernst & Young, L.L.P,* 171 F.3d 527, 534 (7th Cir.1999) (quoting 29 C.F.R. § 541.315); 29 C.F.R. § 541.3(e); *see also Freeman,* 80 F.3d at 83; *Dingwall v. Friedman Fisher Associates, P.C.,* 3 F.Supp.2d 215, 218 (N.D.N.Y.1998) (Kahn, J.). The Court will first address the second element outlined above—the "duties" test.

### 1. Duties of an NDT Tech

■ Defendant insists that plaintiff is a learned professional because he possesses knowledge of an advanced type not generally attained at the high school level. In support, defendant points to the facts that plaintiff received certification from the State University of New York at Delhi, he spent three and one-half years at Mohawk Valley Community College, he earned a degree from the College of Oceaneering, and he received numerous advanced certifications while at ATL. ATL further contends that plaintiff's job required the consistent exercise of discretion and judgment because he was responsible for project management, performing field work, and engaging in client management, report preparation, report review, and decision making. According to ATL, when plaintiff was promoted, he took on the additional financial, management, and marketing responsibilities.

■ Although DeBejian may have an advanced education, that inquiry is not determinative. The proper focus is on whether the particular position at issue necessitated such advanced knowledge. *See Bohn v. Park City Group, Inc.,* 94

---

**2.** In its answer, ATL raised as an affirmative defense that plaintiff was employed in either a bona fide administrative or professional capacity. However, in response to plaintiff's motion for summary judgment, defendant addresses only whether plaintiff was employed in a bona fide professional capacity and, thus, has abandoned the argument that he was employed in a bona fide administrative capacity. *See Lauro v. The City of New York,* 39 F.Supp.2d 351, 366, n. 13 (S.D.N.Y.1999).

F.3d 1457, 1462 (10th Cir.1996); *Dybach v. State of Florida Dep't of Corrections*, 942 F.2d 1562, 1565 (11th Cir.1991) ([T]he determinative factor is the job requirement and not the education in fact acquired by the employee.); *Dingwall*, 3 F.Supp.2d at 218 ("The duties test for the professional exemption concerns whether the nature of the employee's *duties* are appropriately considered professional.") (emphasis supplied).

#### a. Qualifications for the NDT Tech Position

The undisputed evidence indicates that the NDT Tech position does not require "knowledge of an advance type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." 29 C.F.R. § 541.3(a)(1). NDT Techs need not have a specialized degree and need not enroll in an extended course of specialized intellectual instruction and study. *See* Thew Dep., at 72 (stating that the qualifications for a NDT Tech could be pretty minimal). Rather, that position merely requires a high school education, or its equivalent, in addition to some specialized, but not lengthy, training and hands-on experience. Evidence submitted by the plaintiff reveals that an ATL employee can become a Level I NDT Tech by possessing a high school diploma, or its equivalent, attending 97 hours of training, and having three months of on-the-job experience. To become a Level II NDT Tech at ATL, an employee must complete an additional 100 hours of training, and have at least 9 months of practical experience. This is advanced knowledge from a "general academic education and from an apprenticeship and training in the performance of routine mental, manual, or physical processes," and not from a "prolonged course of specialized intellectual instruction and study."[3] 29 C.F.R. § 541.3(a)(1); *see also Fife v. Harmon*, 171 F.3d 1173, 1177 (8th

Cir.1999); *Dybach*, 942 F.2d at 1565 ("The duties of that position must call for a person who is in a learned profession with at least a college degree in a specialized type of learning. A college degree of a generalized type does not meet that requirement.") (citing 29 C.F.R. § 541.302(a)); *Quirk v. Baltimore County, Maryland*, 895 F.Supp. 773, 785 (D.Md.1995). The learned professions typically require years, not weeks, of study.

#### b. Primary Duties of the NDT Tech Position

An analysis of the primary duties of the job itself demonstrates that it is not of a professional nature. The primary duty of an NDT Tech involves utilizing various tools to ascertain whether the subject steel conforms to industry and/or project standards. The NDT Tech does not interpret data, but merely records the test results. *See, e.g., Reich v. State of Wyoming*, 993 F.2d 739, 741 (10th Cir.1993). The NDT Tech then compares the test results with industry and/or project standards to determine whether the inspected steel conforms with such standards. *See* Thew Dep., at pp. 83–85. The results are then reduced into a report. These tasks do not require advanced knowledge, but the use of specific skills.

Further, the NDT Tech position does not include work requiring the consistent exercise of discretion and judgment. *See* 29 C.F.R. § 541.315(a). To the contrary, as noted, the NDT Tech merely compares test results with industry or project standards. The NDT Tech has no authority to deviate from these standards, to decide to accept non-conforming steel, or to otherwise exercise independent judgment or discretion. *See O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir. 1988); 29 C.F.R. § 541.207(a) ("In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct

---

**3.** According to the undisputed evidence before the Court, plaintiff was never qualified beyond Level II. *See* DeBejian Reply Aff., at ¶ 3.

and acting or making a decision after the various possibilities have been considered. The term ... implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision, and with respect to matters of significance."). Indeed, although not binding, see *Freeman*, 80 F.3d at 83, the Secretary of Labor's interpretations specifically note that:

Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits. Employees of this type may make recommendations on the basis of the information they develop on the course of their inspections (as for example, to accept or reject .. a product manufactured to specifications), but these recommendations are based on the development of the facts as to whether there is conformity with the prescribed standards. In such cases a decision to depart from the prescribed standards or the permitted tolerance is typically made by the inspector's superior. The inspector is engaged in exercising skill rather than discretion and independent judgment within the meaning of the[se] regulations.

29 C.F.R. § 541.207(c)(2); *see also* 29 C.F.R. § 541.305(b) ("Purely mechanical or routine work is not professional."). The Secretary of Labor's interpretation at § 541.207(c)(2) fully comports with the evidence before the Court regarding the NDT Tech position and compels the conclusion that plaintiff was not a professional employee.

Plaintiff's promotion in October 1997 does not require a different result.[4] Although ATL submits affidavits stating that plaintiff's responsibilities increased in October 1997 to include project management, technical supervision, report preparation and report review, scheduling, and marketing, see Remington Aff., at ¶ 26; Thew Aff., at ¶ 14, it submits no evidence to support a conclusion that these additional responsibilities transformed plaintiff into a professional. *See Adams v. Department of Juvenile Justice of the City of New York*, 143 F.3d 61, 65 (2d Cir.1998). To the contrary, the evidence reveals that the major portion of plaintiff's job responsibilities continued to consist of field inspections as it had before his promotion. *See* Thew Dep., at 93 ("I suspect that [the percentage of time plaintiff spent doing field work once he became an Assistant Project Manager is] fairly high because that's what we are all about, is providing technical services. So even though you are in management you are still doing a lot of hands-on type work.... I would hope [that more than half of his time was still spent on providing technical services]."); *see also Adams*, 143 F.3d at 65 ("Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply."). Finally, whether plaintiff performed supervisory functions, engaged in marketing, or had financial and other management responsibilities is irrelevant to the question of whether he was employed in a bona fide professional capacity. *See Fife*, 171 F.3d at 1177 ("Notably, 'management' is absent from the professions listed in the explanatory regulations.") (Citing 29 C.F.R. § 541.301(e)(1)); *Piscione*, 171 F.3d at 534 ("The administrative exemption test ... requires that an employee's primary duty involve office or nonmanual work 'directly related to management policies or general

---

**4.** It must be remembered that ATL did not argue in opposition to plaintiff's motion for summary judgment that plaintiff is exempt as

an employee employed in a bona fide administrative capacity.

business operations,' while the professional exemption test mandates that an employee's work require advanced knowledge in a field of science or learning."). Plaintiff did not acquire any such managerial or supervisory skills through knowledge of an advanced type or extensive education. Such skills could be, and were, learned on the job. *See* Thew Dep., at pp. 72–74.

Based upon this evidence, a rational finder of fact could only conclude that the NDT Tech position does not necessitate any advanced knowledge in a field of science or learning. Accordingly, no rational factfinder could conclude that ATL is able to fulfill its burden of demonstrating that plaintiff is exempt from the FLSA and, therefore, summary judgment in favor of plaintiff is warranted. *Compare O'Dell,* 856 F.2d at 1453 (inspector exempt because he had discretion to handle discrepancies, conduct negotiations, reject unacceptable work, review and override decisions of quality control inspectors, and were involved in developing field inspections procedures); *Dingwall,* 3 F.Supp.2d at 218 (engineer with decision-making authority satisfied duties test).

### C. Liquidated Damages

■ Plaintiff also moves for summary judgment seeking a determination that he is entitled to liquidated damages under 29 U.S.C. § 216(b). Under that section, an employer who violates § 206 "shall be liable to the employee ... affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA." *Herman v. RSR Sec. Servs., Ltd.,* 172 F.3d 132, 142 (2d Cir.1999) (citing *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 583–84, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942)).

■ Under the FLSA, liquidated damages are "the norm and single damages the exception." *Id.* Courts have discretion to deny liquidated damages only where "the employer shows that, despite the failure to pay appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate the FLSA." *Id.* (citing 29 U.S.C. § 260); *see also Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987). The burden of demonstrating good faith is an onerous one that rests with the employer. *See id.* "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them." *Id.* This entails " 'plain and substantial' evidence of subjective good faith and objective reasonableness." *Reich v. Southern New England Telecomm. Corp.,* 121 F.3d 58, 70 (2d Cir.1997).

Here, the steps undertaken by ATL included contacting counsel (the identity of which ATL could not remember) sometime in the eighties (the precise time of which ATL could not remember) to "know what the guidelines were so that [it] could follow the guidelines." Thew Dep., at 28. The extent of the review was "to tell [ATL] what was required to meet the requirements of exempt employees." *Id.,* at 30. However, ATL did not furnish counsel with the duties or qualifications of particular positions to ascertain whether such positions would be exempt under the FLSA. *See id.,* at 30–31.

■ Although ATL purportedly inquired of counsel regarding the FLSA's general requirements, there is no proof whether ATL made this inquiry prior to its determination that plaintiff was exempt or, for that matter, the extent of ATL's inquiry regarding the requirements of the FLSA. Similarly, as noted, ATL made no effort to determine whether particular positions, including plaintiffs, would, in the opinion of counsel, be exempt from the overtime requirements of the FLSA. Sig-

nificantly, ATL offered no evidence that its determination that plaintiff was exempt was based upon its communications with counsel. Moreover, it is irrelevant that plaintiff never complained about not being compensated for overtime. *See Southern New England Telecomm.*, 121 F.3d at 71. Thus, while ATL may not have intentionally violated the FLSA, the proof before the Court is insufficient to demonstrate that its actions were in "good faith," as that phrase is understood in the context of the FLSA. *See id.* (" 'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them."). Accordingly, plaintiff is entitled to liquidated damages.

### D. Statute of Limitations

■■■ Finally, plaintiff seeks a determination that a three-year statute of limitations should apply to the instant case because ATL willfully violated the FLSA.

■■■ The FLSA provides for a two-year statute of limitations. 29 U.S.C. § 255(a). This period may be extended to three years for "a cause of action arising out of a willful violation." *Id.; see also Herman*, 172 F.3d at 141. In order to benefit from the three-year statute of limitations, plaintiff bears the burden of proving "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988)).

Plaintiff has presented no evidence that ATL knew that it was violating the FLSA. Similarly, there is a paucity of evidence that ATL recklessly disregarded its obligations under the statute. The evidence reveals that ATL contacted counsel to ensure that its policies conformed to the requirements of the FLSA. Although, as previously discussed *supra* at II(c), ATL did not take sufficient steps to ensure com-

pliance with the FLSA, ATL did make an effort to ascertain whether its policies were in compliance and, therefore, it cannot be said that ATL recklessly disregarded whether its conduct violated the FLSA.

### III. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgement is GRANTED IN PART and the Court finds that: (1) ATL violated 29 U.S.C. § 206 and 12 N.Y.C.R.R. Part 142; (2) plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 216(b); and (3) the two-year statute of limitations contained in 29 U.S.C. § 255(a) applies.

**IT IS SO ORDERED**