Carole H. RILEY, Plaintiff,

v.

The TOWN OF BETHLEHEM; Board of Appeals of the Town of Bethlehem; Sheila Fuller, Town Supervisor; John H. Flanigan, Individually and In His Capacity as Town Building Inspector for the Town of Bethlehem; Michael Hodom; Robert Wiggand; Richard Lewis, James Morgan, Marjory O'Brien, Individually and In Their Capacities as Members of the Board of Appeals of the Town of Bethlehem; and Dixon Welt, Attorney for the Board of Appeals of the Town of Bethlehem, Defendants.

No. 97–CV–1788.

United States District Court,
N.D. New York.

March 30, 1999.

454

Law Offices of Peter M. Pryor, Albany, New York, for plaintiff; Peter M. Pryor, of counsel.

Maynard, O'Connor, Smith & Catalinotto, L.L.P., Albany, New York, for defendants; Jeffrey E. Hurd, of counsel.

Galvin & Morgan, Delmar, New York, for defendants Marjory O'Brien, and James E. Morgan in their individual capacities; Madeline Sheila Galvin, of counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

This action has its genesis in the enforcement of a zoning code against plaintiff. The gravamen of the Complaint is that defendants selectively enforced the zoning code against plaintiff because of her race. Plaintiff brings claims, inter alia, that defendants violated her constitutional rights to procedural due process, substantive due process, and equal protection.

Defendants now move to dismiss pursuant to FED.R.CIV.P. 12(b)(1) and (6), or, alternatively, for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, I grant in part and deny in part defendants' motions.

## I. BACKGROUND

### A. Facts

In the spring of 1996, Plaintiff Carole H. Riley, an African–American female, moved to the Albany, New York area to pursue her Pizza Hut franchisee business. At the outset, she retained a real estate agent to find her a home residence that could also serve as a home office. She viewed one property, which she ultimately did not pursue because of zoning concerns. In August 1996, she purchased real property located at 1545 New Scotland Road in Bethlehem, Albany County, New York (the "property"). According to plaintiff, while she understood that the property was (and remains) zoned "A residential," her real estate agent led her to believe that the property could also be used as a home office. *See* Plaintiff's Statement of Material Facts, at ¶ 15. That understanding also appears to have stemmed from poor legal advice and a misleading real estate listing.

After moving in, plaintiff began using the property as both a residence and home office. Her business partner, Kelli Givens, an African–American female, also stayed in the house on the property. Plaintiff and Givens are the majority stockholders in

Horizon Collective, Inc. ("Horizon"), which owns approximately 47 franchises for Pizza Hut restaurants in upstate New York and western portions of Massachusetts. Horizon leases a portion of the property as its designated home office. According to plaintiff, though she employed approximately 7 persons at her home, her home office involved only the administrative aspects of the Horizon/Pizza Hut business.

On February 7, 1997, the Town Building Inspector, John Flanigan, investigated plaintiff's property for suspected zoning noncompliance. Upon investigation, Flanigan noticed a large dumpster on the property with construction materials in it and kitchen equipment stored in the garage. He also noticed construction work to the house, which a construction worker informed him was being renovated for home office use. After receiving a tour of the property by the construction worker, Flanigan returned to his office and drafted a letter to plaintiff informing her that use of the property as a home office violated the zoning code. The letter directed her to cease and desist using the property as a home office.

According to plaintiff, she first learned that her home office presented a zoning problem after Flanigan visited the property and subsequently sent her the cease and desist letter. Thereafter, she retained

counsel, and on February 27, 1997, applied to the defendant Board of Appeals of the Town of Bethlehem (the "BOA") for a use variance "to permit [her] to maintain home offices (14 employees) and 2 separate apartments."[1] While her application was pending, plaintiff was permitted to continue using the property as a home office.

On April 16, 1996, a hearing was held, at which plaintiff and her attorney, Robert Wakemen, were present. At that time, both Wakemen and plaintiff made arguments in support of her use variance application. Among other things, plaintiff testified that she desired to continue using the property for home office purposes in connection with her Pizza Hut business. She stated that she employed approximately 7 others at the house, excluding herself and her partner. She also admitted that she holds monthly staff meetings with her employees at the property, during which approximately 18 to 20 persons from her restaurants are present. She also testified that she made no changes to the interior or exterior of the building or the property, except for electrical work to accommodate her computers. At the tailend of the hearing, the following exchange took place between Riley and defendant Lewis, a BOA member:

> Lewis: Ms. Riley, one of our problems is what you're asking for is a use variance and our ability to what I call,

---

1. Town Code § 267–2(b), which sets forth four criteria that must be met for the approval of a use variances, provides as follows:

 No use variance shall be granted by a board of appeals without a showing by the applicant that applicable zoning regulations and restrictions have caused unnecessary hardship. In order to prove such unnecessary hardship the applicant shall demonstrate to the board of appeals that for each and every permitted use under the zoning regulations for the particular district where the property is located, (1) the applicant cannot realize a reasonable return, provided that lack of return is substantial as demonstrated by competent financial evidence; (2) that the alleged hardship relating to the property in question is unique, and does not apply to a substantial portion of the district or neighborhood; (3) that the requested use variance, if granted, will not alter the essential

character of the neighborhood; and (4) that the alleged hardship has not been self-created.

Additionally, Town Code § 128–100 provides, in relevant part:

(2) The granting of the variance will alleviate a clearly demonstrable hardship as distinguished from a special privilege or convenience sought by the owner, which hardship is peculiar to such land or building and does not apply generally to land or buildings in the vicinity of neighborhood and has not resulted from any act of the application subsequent to the adoption of this chapter.

(3) In any case, the granting of the variance will be in harmony with the intent and purpose of this chapter; will not constitute, in effect, an amendment of any district regulations or boundaries; and will not be injurious to the neighborhood.

wiggle room, is very limited. For instance, one of the things is, that no such use variance should be granted by a[BOA] without a showing by the Applicant that the applicable zoning regulations and restrictions have caused unnecessary hardship and that the alleged hardship has not been self-created.

Mr. Riley: There is a hardship if I have to lose a $500,000 investment because—

Mr. Lewis: I understand that but now I go on the second point and say, the alleged hardship has not been self-created. Could you address that?

Ms. Riley: I made a mistake but I relied on the representations that were made to me by ... [my listing real estate agent] ... and my attorney who did not make a representation but obviously failed to do the proper research that would uncover the fact that we have a situation.

After hearing plaintiff's testimony, and at the BOA's suggestion and plaintiff's concurrence, the BOA adjourned the matter to allow plaintiff the opportunity to gather and submit additional evidence and to address the concerns raised by the BOA. On July 9, 1996, plaintiff filed a supplemental application with the BOA requesting that she be permitted, absent a variance, to use the property as a home office pursuant to § 128–35 [2] of the Town Code.

A second hearing was held on September 17, 1997. Plaintiff was present with her new attorney, Peter Pryor. Once again, plaintiff testified in support of her applications. Following her testimony, Edward Kleinke, a licensed landscape architect, testified on plaintiff's behalf that other homeowners within the Town have home offices in residentially zoned areas. Specifically, he identified two businesses within 500 feet of plaintiff's property that are zoned A residential—the Slingerlands Fire Hall and the medical office of Joanne Van Woert, M.D. Freinke also identified 4 businesses in zoned "AA residential" areas located more than 500 feet but less than 1000 feet from plaintiff's property—Youngblood Law Offices, Coventry Construction, Gialli Interiors and Spectr-Probe Consulting. In addition, he identified 19 businesses in residentially zoned districts more than 1000 feet but less than 4000 feet from plaintiff's property. He also testified that after reviewing the business listings in the local telephone directory, he identified approximately 90 other businesses in the Town of Bethlehem that are located in a residentially zoned districts. In reply, Flanigan testified that the Slingerlands Fire Hall was exempt from the zoning law and that the Van Woert office had been granted a use variance.

At a regularly scheduled public hearing on October 15, 1997, the BOA unanimously voted to deny plaintiff's application. At that time, the BOA directed defendant Dixon Welt, the Town attorney, to draft a resolution denying the application. Welt drafted and presented the resolution denying plaintiff's use variance application, which the BOA passed on November 5, 1997. According to the Resolution and the affidavits of the defendant BOA members, the BOA denied her a use variance because she did not satisfy the statutory requirements. The BOA also denied plaintiff's supplemental application during the November 5, 1997 public hearing.

### B. Procedural History

On December 8, 1997, plaintiff filed a Complaint against defendants, the Town of

---

**2.** Section 128–35 provides, in pertinent part, as follows:

A store, trade or business shall not be permitted as an accessory use in any residence district, except that the office of a doctor, surgeon, dentist, teacher, engineer, architect, musician, lawyer or other professional person may be located in the dwelling occupied by said professional person as a residence, and except that any person carrying on a customary home occupation such as dressmaking, millinery or laundry may do so in a dwelling occupied by him as a residence, except that an office or studio equipped to accommodate outside help shall not be permitted.

Bethlehem (the "Town"); the BOA; Sheila Fuller ("Fuller"), Town Supervisor; Flanigan, individually and in his capacity as the Town Building Inspector; Dixon Welt ("Welt"), Attorney for the BOA; and Michael Hodom ("Hodom"), Robert Wiggand ("Wiggand"), Richard Lewis ("Lewis"), James Morgan ("Morgan"), and Marjory O'Brien ("O'Brien"), individually and in their official capacities as members of the BOA. The bedrock of the Complaint is that defendants have selectively enforced the zoning code against her because of her race. Specifically, the Complaint alleges that adjacent white homeowners are openly conducting businesses from their homes without interference from and with the knowledge of the Town and the other defendants. The Complaint presents a myriad of claims, pursuant to 42 U.S.C. § 1981, 1982, 1983, and 1985, for, inter alia, violations of procedural due process, substantive due process, equal protection, and the Commerce Clause. It also asserts a number of pendent state-law claims.

Presently before the Court are two motions. First, defendants O'Brien and Morgan move in their individual capacities to dismiss the Complaint pursuant to FED. R.CIV.P. 12(b)(1) and (6), or, alternatively, for summary judgment pursuant to FED. R.CIV.P. 56. Second, the remaining defendants and O'Brien and Morgan in their official capacities move to dismiss the Complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6), or, alternatively, for summary judgment pursuant to FED.R.CIV.P. 56.[3]

## II. DISCUSSION

### A. The Eleventh Amendment

Defendants Morgan and O'Brien move in their personal capacities to dismiss the

claims against them on the ground of Eleventh Amendment immunity.

■ The Eleventh Amendment of the United States Constitution bars suits against a state in federal court unless the state consents to be sued, or Congress enacts legislation, pursuant to section 5 of the Fourteenth Amendment, overriding the state's Eleventh Amendment immunity.[4] *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The "state" for purposes of the Eleventh Amendment generally includes state agencies and state officials sued in their official capacities, but not political subdivisions. *See, e.g., Monell v. Department of Social Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Here, the BOA of the Town, of which Morgan and O'Brien are members, is plainly not an arm of the state. *See Mancuso v. New York State Thruway Auth.,* 86 F.3d 289, 292–96 (2d Cir.) (listing six factors as relevant to whether an entity is an arm of the state), *cert. denied,* —— U.S. ——, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996); *see also Owen v. City of Independence, Missouri,* 445 U.S. 622, 650, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). Moreover, it is hornbook law that even state officers sued in their personal capacities may be sued in federal court because such suits are not against the state, but rather assert liability against the individual. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 238, 94

**3.** Plaintiff withdrew her cross-motion for a preliminary injunction. *See* Plaintiff's Letter to Court, filed Dec. 22, 1998 (Docket No. 59).

**4.** The Eleventh Amendment provides:
The Judicial Power of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.
U.S. CONST amend. XI.

S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir.1990) ("The Eleventh Amendment ... provides no immunity for state officials sued in their personal capacities.").

Accordingly, Morgan and O'Brien do not have Eleventh Amendment immunity.

### B. Standard for Summary Judgment

All of the defendants next move to dismiss the Complaint for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to FED.R.CIV.P. 56. In support of their motions, defendants submitted numerous matters outside of the pleadings, including affidavits from members of the BOA, plaintiff's affidavits to the BOA, transcripts from the BOA hearings and various other exhibits. In opposition to defendants' motions, plaintiff likewise submitted various affidavits and exhibits. Because I have considered these submissions from both parties in addressing defendants' motions, and because plaintiff was on notice that defendants' motions were in the alternative for summary judgment, I will treat defendants' motions as ones for summary judgment.

The standard for summary judgment is well-settled. Under FED.R.CIV.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct.

2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a

genuine issue for trial." FED.R.CIV.P. 56(e).

The Court is mindful that in cases where the defendants' state of mind or motives are at issue, records will rarely document such factors, and as such, the materials before the district court in a summary judgment motion "must be carefully scrutinized" for circumstantial evidence about the defendants' state of mind and those factors that motivated the challenged course of action. *See Chertkova*, 92 F.3d at 87; *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994). Where such subjective issues are "squarely implicated," a multitude of factual inferences may arise where. "reasonable persons may differ in their resolution." *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984). Subjective questions such as motive, intent, or conscience may compel a trial "inasmuch as cross-examination is the best means of testing the credibility of the evidence." 10A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2727, at 137 (1983); *see also Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary procedure used sparingly when motive and intent of the defendant play leading roles).

It is with these considerations in mind that I address defendants' motions for summary judgment.

## C. Is Summary Judgment Premature?

As a threshold matter, plaintiff asserts that summary judgment is premature because she has not yet conducted discovery. Although she cites no authorities in support of this argument, I treat this as a motion pursuant to Rule 56(f), which provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ In this Circuit, "a party seeking such discovery must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater, Inc. v. Dept. of the Navy*, 891 F.2d 414, 422 (2d Cir.1989) (*"Hudson"*) (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985)).

■ In the present case, the affidavit of plaintiff's attorney, Peter Pryor, contains a general, one-sentence statement that provides no hint at why plaintiff cannot oppose summary judgment without discovery. *See* Pryor Aff., at ¶ 7. Clearly, such a general, vague, and conclusory request—bereft of reason—is insufficient to satisfy the specific requirements of Rule 56(f). *See* FED.R.CIV.P. 56(f); *see also Hudson* 891 F.2d at 422 (listing four criterion that must be met); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir.1994) ("Rule 56(f) is not a shield against all summary judgment motions. Litigants seeking relief under the rule must show that the material sought is germane to the defense. . . .") (internal quotations omitted); *United States v. Private Sanitation Ind. Ass'n of Nassau/Suffolk, Inc.*, 995 F.2d 375, 377 (2d Cir.1993) (affirming Rule 56(f) denial when affidavit did not describe "in specific terms evidence that might be forthcoming and would demonstrate that a genuine issue actually existed"). Although it is sometimes said that Rule 56(f) is a safeguard against premature grants of summary judgment and should generally be applied "with a spirit of liberality," see 10A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: § 2740, at 532 (2d ed.1983), this principle

has no application when a plaintiff has had ample opportunity for discovery or when, as here, a plaintiff fails to offer any explanation why discovery is needed to oppose summary judgment.

Accordingly, because plaintiff has provided the Court with no basis from which to conclude that discovery is needed to present facts essential to justify her opposition to summary judgment, her Rule 56(f) request is denied.

### D. Request to Strike Defendants' Affidavits and Exhibits

Plaintiff next seeks to strike the defendants' affidavits and the transcripts of the BOA hearings submitted in support of their motions for summary judgment.

Turning first to the affidavits, plaintiff asserts that they are "hearsay and (that she) should have an opportunity to confront any defendant with respect to the contents of his or her affidavit." *See* Pryor Aff., at ¶ 5.

"The principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir.1997). The requirements for an affidavit are contained in Rule 56(e), which provides that "[s]upporting and opposing affidavits . . . be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." FED.R.CIV.P. 56(e); *see also Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir.1994); *Union Ins. Society of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 952 (2d Cir. 1965); *Christopher–Ketchum v. Agway Energy Products*, 988 F.Supp. 610, 615 (N.D.N.Y.1997).

In this case, plaintiff does not cite any affidavit or specific statement as hearsay. Rather, she makes sweeping assertions that unidentified defendants' affidavits— which number approximately ten—are presumably riddled with inadmissable hearsay. Despite this antipathy for specificity, I have independently reviewed defendants' affidavits and find that each satisfies the requirements of Rule 56(e). To the extent, however, that any specific averment contains inadmissible hearsay, it will not be relied upon in reviewing defendants' motions. As for plaintiff's belief that affidavits on summary judgment should not be considered because the opposing party cannot confront the affiant, she is mistaken. FED.R.CIV.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the *affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (emphasis added).

■■ With respect to the transcripts from the BOA hearings, plaintiff asserts that, upon information and belief, the transcripts "are a summary and the contents of the tapes upon which such minutes are based would be the best evidence of what transpired at said meetings." Pryor Aff., at ¶ 6. "A motion to strike will [ ] be granted when it challenges documentary evidence that was submitted in support of or in opposition to a summary judgment motion, but which has not been properly authenticated." *See, e.g., Dedyo v. Baker Eng'g New York, Inc.*, 1998 WL 9376, *4 (S.D.N.Y. Jan. 13, 1998).

Here, defendants have properly authenticated the transcripts by including a certification from the Secretary of the BOA, Jo–Mary Dragon, which avers that each transcript is a complete and accurate transcription of the recording made of the BOA hearing. By contrast, plaintiff has provided no evidence suggesting that the transcripts were altered or otherwise unreliable. In fact, plaintiff herself cites to and relies on the BOA transcripts submitted by defendants in opposing summary judgment, which belies her present suggestion that the transcripts are unreliable.

Accordingly, plaintiff's request to strike the transcripts are denied.

### E. Plaintiff's Claims

Turning to the merits, the Complaint presents a myriad of federal claims, pursuant to 42 U.S.C. § 1981, 1982, 1983, and 1985, for, inter alia, violations of procedural due process, substantive due process, equal protection, and the Commerce Clause. Additionally, plaintiff has sued a number of defendants in their personal and official capacities. The below discussion will address each claim in turn.

#### 1. 42 U.S.C. § 1983 Claim

■ To maintain a section 1983 action, a plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See, e.g., Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994). In this case, defendants do not challenge whether they acted under color of state law. Rather, they challenge only whether they deprived plaintiff of rights secured by the Constitution or laws of the United States.

#### (a) Equal Protection

Plaintiff first asserts that defendants deprived her of her right to equal protection under the Fourteenth Amendment. Specifically, she alleges that defendants selectively enforced the zoning law against her.

While selective enforcement "is a murky corner of equal protection law in which there are surprisingly few cases," *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995), the Second Circuit has stated that a violation of equal protection by selective enforcement arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exer-

cise of constitutional rights, or malicious or bad faith intent to injure a person. *See, e.g., LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994.).

To facilitate the analysis of plaintiff's equal protection claim, I divide the events into two broad categories: (i) zoning code enforcement, and (ii) zoning-variance approval. Additionally, I will review the claims against the defendants separately as necessary.

#### (i) Zoning Code Enforcement Events

##### A. Defendant Flanigan

Plaintiff complains that defendant Flanigan selectively enforced the zoning code in violation of her equal protection rights.

Flanigan, the Chief Building Inspector of the Town, is solely responsible for enforcing the zoning code. He avers that he investigates (i) any complaints of non-conforming use made by a resident and (ii) any open use of property in violation of the zoning code. Flanigan Aff., at ¶ 2. He continues that he investigated plaintiff's property after receiving a complaint on February 7, 1997 from William McGarry, plaintiff's neighbor. Flanigan Aff., at ¶ 3; McGarry Aff., at ¶ 2. According to Flanigan, he had never met plaintiff and did not know that she was African–American until the April 16, 1997 hearing. Flanigan Aff., at ¶ 6.

■ As evidence that Flanigan selectively enforced the zoning code, plaintiff cites Edward Kleinke's testimony before the BOA. Kleinke presented exhibits and testified to the BOA that he had found in local telephone directories a number of business listings with addresses in residentially zoned districts. Specifically, he testified and presented exhibits indicating that there are two businesses within a 500 foot radius of plaintiff's property that are zoned A residential: the Slingerland Fire Hall and the Joanne Van Woert Medical offices. Within a greater than 500 foot but less than 1000 foot radius, Kleinke testified

that there are four businesses in residentially zoned areas: Charles Youngblood's Attorney's Office, Coventry Construction, Gialli Interiors and Spectr–Probe Chemical Consulting. Within a greater than 1000 foot but less than 4000 foot radius, Kleinke cited 19 business listings that were located in residentially zoned areas. Kleinke also testified that he had found some 90 other business listings that identified their addresses in a residential district of the Town.

Plaintiff's attorney, Peter Pryor, also testified at the hearing that he had requested from Flanigan any previously filed applications for use variances. Pryor testified that in response to his request, Flanigan told him that no use variance applications had been made with the exception of three properties. *See* Exhibit H to the Morgan Motion (transcript of Sept. 17, 1997 BOA hearing).

Plaintiff also points to a contradiction between Flanigan's testimony before the BOA and his affidavit in support of summary judgment relating to why he investigated plaintiff for zoning noncompliance. On the one hand, Flanigan testified before the BOA that on February 7, 1997, he investigated plaintiff's property after being in the area and noticing demolition material outside plaintiff's dumpster. *See* Exh. A to Morgan Motion, at 2 (transcript of the April 16, 1997 BOA hearing); Exhibit H to the Morgan Motion (transcript of Sept. 17, 1997 BOA hearing). On the other hand, his affidavit submitted in support of summary judgment avers that he investigated plaintiff's property after receiving a complaint from plaintiff's neighbor, William McGarry. *See* Flanigan Aff., at ¶ 3–4.

Lastly, plaintiff relies on specific factual allegations in the Verified Complaint to defeat summary judgment. The general rule, of course, is that "to defeat a summary judgment motion that is properly supported by affidavits, depositions, and documents as envisioned by FED.R.CIV.P. 56(e), the opposing party is required to come forward with materials envisioned by the Rule 56(e), setting forth specific facts showing that there is a genuine issue of material fact to be tried. He cannot defeat the motion by relying on the allegations in his pleading, see *id.*, or on conclusory statements." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir.1996). This rule is modified, however, when a verified complaint is filed, in which case "[a] verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995) (citations omitted).

Here, because plaintiff filed a Verified Complaint, I treat it as an affidavit for summary judgment purposes insofar as it satisfies the requirements of Rule 56(e). In the Verified Complaint, plaintiff makes specific factual allegations that the businesses identified by Kleinke within 1000 feet of plaintiff's property—Charles Youngblood's Attorney's Office, Coventry Construction, Gialli Interiors and Spectra–Probe Chemical Consulting—are operated openly by white homeowners. Complaint, at ¶ 38. The Complaint also identifies eleven businesses owned by white homeowners within 4000 feet of plaintiff's property that operate openly to the public and are located in residentially zoned districts. Complaint, at ¶¶ 39–41.

Based on Kleinke's testimony[5] of the approximately 26 businesses located in residentially zoned areas within 4000 feet of

---

**5.** While Kleinke's testimony suffers from shortcomings; for example, it is unclear whether the identified businesses would have been investigated for zoning compliance for either operating openly or because complaints had been filed against them, or whether they are operating legally either with a use variance or under Town Code law § 128–35, the inquiry on summary judgment is not whether plaintiff has proven her case but whether she has presented sufficient evidence to create a genuine factual dispute as to whether Flanigan selectively enforced the zoning code.

plaintiff's property and the approximately 90 other businesses located in residentially zoned districts within the Town, Pryor's testimony that only three use variances had been granted, Flanigan's variable statements with respect to how he came to investigate plaintiff's property, plaintiff's averments that white homeowners openly operate the identified businesses in residentially zoned areas, and drawing all reasonable inferences in favor of the plaintiff, I find that plaintiff has offered sufficient evidence to create a factual dispute with respect to the selective enforcement prong of her equal protection claim against Flanigan.

The remaining question is whether plaintiff has presented sufficient evidence to support her claim that such selective enforcement was based on impermissible considerations of race. In light of the above circumstances, I find that plaintiff has assembled facts adequate to raise a plausible inference that Flanigan selectively enforced the zoning code against her because of her race. Accordingly, I deny defendants' motion to dismiss the claim of selective enforcement against Flanigan.

### B. Remaining defendants

██ Plaintiff has provided no evidence, however, that any of the remaining defendants were personally involved in the enforcement of the zoning code against her. *See Taylor v. Brentwood Union Free Sch. Dist.*, 143 F.3d 679, 685 (2d Cir.1998) (stating that § 1983 plaintiff must prove that defendant caused the deprivation of his or her rights); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996) (stating that defendant's personal involvement in the constitutional deprivation is required for § 1983 liability); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991).

Accordingly, these claims against the remaining defendants in their personal capacities are dismissed.

### (ii) Zoning Variance Events

#### A. The BOA Defendants

██ Turning next to the zoning variance events, plaintiff claims that defendant members of the BOA violated her rights to equal protection by denying her applications to use her property as a home office on account of her race.

In support of summary judgment, the BOA members submitted affidavits stating that plaintiff's application for a use variance was denied because she did not satisfy the statutory requirements. Specifically, each notes that public hearings were held in connection with plaintiff's application on April 16, 1997 and September 17, 1997, at which plaintiff had the opportunity to present evidence. Each also avers that on October 15, 1997, at a regularly scheduled public meeting, plaintiffs' application was discussed and unanimously denied because plaintiff did not meet the requirements of section 267–b(2) for the granting of a use variance. Further, each avers that he or she reached this decision freely and independently based upon the information presented by the plaintiff at the public hearings and that at no time did anyone attempt to coerce or influence his or her decision relative to plaintiff's application. *See* Hodom Aff.; Wiggand Aff.; Lewis Aff.; O'Brien Aff. and Exh. A attached thereto; Morgan Aff.

Plaintiff, by contrast, has offered no evidence in support of her equal protection claim that the BOA members treated plaintiff differently than other similarly situated use-variance applicants. Specifically, she has provided no evidence that the BOA granted use variances to others similarly situated. *See Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir.1995) (dismissing selective enforcement claim against members of zoning board because plaintiff "fail[ed] to present any evidence that any of their neighbors were either required to seek a variance or actually made such a request of the Board"). Nor has she presented any evidence that the

BOA members applied the Town Code and its criteria for a use variance more stringently on account of her race. She also has offered no evidence to substantiate her allegation that the BOA treated her differently by conspiring against her in an attempt to induce her departure from the Town. Accordingly, I grant defendants' motion for summary judgment seeking dismissal of plaintiff's claim that the individual BOA members violated her equal protection rights in connection with her application for a use variance.[6]

### B. Remaining Defendants

It is not clear whether plaintiff brings an equal protection claim against the remaining individual defendants in connection with the events surrounding her use variance application. To the extent that she does, her claims against them must be dismissed for the same reason—that there is no evidence that defendants treated plaintiff differently than similarly situated applicants. Even more fundamentally, however, her claim must be dismissed because she has presented no evidence that they were personally involved in the decision to deny her a use variance or otherwise selectively treated her because of her race in connection with her application. See Black, 76 F.3d at 74; Wright 21 F.3d at 501; Moffitt, 950 F.2d at 886.

### (b) Substantive Due Process

Plaintiff also brings a substantive due process claim against defendants.

■■■ "Substantive due process protects only those interests that are implicit in the concept of ordered liberty." Local 342 Long Island Public Serv. Employees, UMD, ILA, AFL—CIO v. Town Bd. of the Town of Huntington, 31 F.3d 1191, 1196 (2d Cir.1994) ("Local 342"). To properly state a substantive due process claim, a plaintiff must identify a property interest and explain how it has been interfered with by the government. See Greene v. Town of Blooming Grove, 935 F.2d 507,

510 (2d Cir.), cert. denied, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991). A plaintiff must also allege that this deprivation was arbitrary or not reasonably related to a legitimate government interest. See Brady v. Town of Colchester, 863 F.2d 205, 215 (2d Cir.1988). When considering a due process claim for the denial of a rezoning application, I am "mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land use determinations by ... local legislative and administrative agencies.'" Zahra, 48 F.3d at 679–80 (quoting Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir.1986)).

### (i) Property Interest

■■■ Defendants assert that plaintiff has no property interest in a zoning variance. "This Circuit uses a strict 'entitlement' test to determine whether a party's interest in land-use regulation is under the Fourteenth Amendment.... The analysis focuses on the extent to which the deciding authority may exercise discretion in arriving at a decision, rather than on an estimate of the probability that the authority will make a specific decision." Zahra, 48 F.3d at 679; see also Crowley v. Courville, 76 F.3d 47, 52 (2d Cir.1996); Ellentuck v. Klein, 570 F.2d 414, 429 (2d Cir.1978); Cedarwood Land Planning v. Town of Schodack, 954 F.Supp. 513, 524 (N.D.N.Y. 1997); Scales v. Village of Camden, 1990 WL 152068, *4–*6 (N.D.N.Y. Oct.5, 1990).

■■■ Here, the Town Zoning Code vests the BOA with considerable discretionary authority. See Town Code §§ 128–100 and 262–2(b). Furthermore, one of the criterion for a use variance is that the hardship was not self-created. Plaintiff admits, however, that she knew upon purchase that her property was zoned A residential but that her broker and attorney led her to believe that her proposed home office use would be permit-

---

**6.** I also note that plaintiff has failed to create a genuine factual dispute as to the second prong—that the BOA members treated her differently because of her race.

ted. Thus, plaintiff cannot persuasively argue that she had an entitlement to a use variance when her zoning predicament may be interpreted as self-created. Similarly, plaintiff cannot plausibly assert that the zoning board had no discretion to deny her application on that or other grounds. In short, this lack of entitlement prevents plaintiff's expectation of success from rising to the level of certainty required to give rise to a cognizable property right. *See, e.g., Crowley,* 76 F.3d at 52 (finding that because Zoning Board had wide discretion in granting variance, landowner had no property interest); *Orange Lake Assoc., Inc. v. Kirkpatrick,* 21 F.3d 1214, 1224 (2d Cir.1994) (same).

Plaintiff attempts to avoid this result by recasting her property interest as the "right to the use of her residence for home professional purposes and consistent with the zoning laws and the custom, use and practice of the Town in allowing white homeowners to use their dwellings for home professional use with employees unhindered in residential A and AA zones." *See* Memorandum of Law of Plaintiff, at 11–12. This vague argument, however, sounds more like a claim seeking to enforce the right to equal protection of the laws—which I have discussed above. At any rate, plaintiff has no property right to employ approximately eight persons at her property in violation of the Town zoning code, which is not irrational or arbitrary on its face.[7]

Accordingly, because plaintiff has failed to identify a protected property interest, her substantive due process claim is without merit.

### (c) Procedural Due Process

Plaintiff also claims that defendants violated her due process rights by failing to conduct fair and unbiased hearings.

■ To state a claim for a violation of procedural due process, a plaintiff must (1) identify a property interest; (2) demonstrate that the governmental action with respect to that property right amounted to a deprivation; and (3) show that the deprivation was without due process of law. *Local 342,* 31 F.3d at 1194.

■ In this case, plaintiffs due process claim fails because she has no property interest in a land use variance. *See* discussion *supra; RR Village Ass'n, Inc. v. Denver Sewer Corp.,* 826 F.2d 1197, 1201–02 (2d Cir.1987) ("[I]f state law makes the pertinent official act discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection"). Defendants also correctly note an alternative basis for dismissal—that plaintiff could have sought meaningful review of the BOA's decision within the state judicial system, but chose instead to commence the present action. The availability of such recourse precludes finding that the defendants' conduct violated plaintiff's rights to procedural due process. *See Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (deprivations of property attributable to unauthorized conduct of state officials do not violate Due Process Clause if state law provides adequate post-deprivation remedy).

Accordingly, plaintiff's procedural due process claim is without merit.

### 2. 42 U.S.C.1985 Claim

■■ To state a claim for relief under section 1985(3), a plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin, & Jenrette*

---

7. I also note that it cannot be said that the BOA had no legitimate reason for denying plaintiff a use variance. *See Southview As-* socs., *Ltd. v. Bongartz,* 980 F.2d 84, 102–03 (2d Cir.1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993).

*Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). Moreover, a "plaintiff must do more than make vague, general or conclusory accusations in order to establish the existence of a conspiracy actionable under section 1985(3)." *Mass v. McClenahan,* 893 F.Supp. 225, 231 (S.D.N.Y.1995) (citing *Williams v. Reilly,* 743 F.Supp. 168, 173–74 (S.D.N.Y.1990)); *see also Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (" '[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.' ") (quoting *Leon v. Murphy,* 988 F.2d 303, 311 (2d Cir.1993)); *X–Men Security, Inc. v. Pataki,* 983 F.Supp. 101, 115 (E.D.N.Y.1997) ("A conspiracy claim under section 1985 must be pled with some degree of specificity.").

In this case, plaintiff's section 1985(3) claim against the BOA members, Welt and Fuller fails because she has provided no flesh to her bare-bone allegations of a conspiracy. *See Boddie,* 105 F.3d at 862; *Mass,* 893 F.Supp. at 231. In turn, her conspiracy claim against defendant Flanigan fails because she does not allege that Flanigan conspired with anyone other than these defendants. *See* Complaint, at ¶¶ 44, 55 and 101. Simply stated, the lynchpin for a conspiracy—an agreement between two or more persons—is missing. *See* 42 U.S.C. § 1985(3).

### 3. Interstate Commerce Claim, Freedom of Association Claim, 42 U.S.C. § 1981 and 42 U.S.C. § 1982

 Defendants also seek dismissal of plaintiff's claims under the Interstate Commerce Clause, under the First Amendment for violation of her right to freedom of association, and her claims brought pursuant to 42 U.S.C. § 1981 and 1982.

Plaintiff does not address any of these claims in her opposition papers, leading me to believe that she has abandoned them. *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (deeming claims abandoned and recommending dismissal when plaintiff failed to provide opposition argument) (citing *Singleton v. City of Newburgh,* 1 F.Supp.2d 306, 312 (S.D.N.Y.1998) (where claim was alleged in the complaint but "not raised elsewhere in the record," court deems claim "abandoned" and grants defendants' summary judgment motion); *National Communications Ass'n, Inc. v. American Tel. & Tel. Co.,* 1998 WL 118174, at *28 (S.D.N.Y. March 16, 1998) (where plaintiff did not address claim in response to defendant's summary judgment motion, claim deemed "abandoned" and defendant granted summary judgment); *Anti–Monopoly, Inc., v. Hasbro, Inc.,* 958 F.Supp. 895, 907 & n. 11 (S.D.N.Y.) ("the failure to provide argument on a point at issue constitutes abandonment of the issue"), *aff'd,* 130 F.3d 1101 (2d Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 48, 142 L.Ed.2d 37 (1998); *Ortho Pharm. Corp. v. Cosprophar, Inc.,* 828 F.Supp. 1114, 1129 (S.D.N.Y.1993) (claim dismissed where plaintiff "appears to have abandoned this claim, having failed to argue the claim in its post-trial memo or in its response papers once [defendant] had addressed the issues in its own brief"), *aff'd,* 32 F.3d 690 (2d Cir.1994)); *see also Irwin v. City of New York,* 902 F.Supp. 442, 451 (S.D.N.Y.1995) (dismissing equal protection claim on summary judgment when plaintiff presented no argument in opposition).

Accordingly, these claims are dismissed.

### 4. Official Capacity Claims

 Plaintiff has sued all the individual defendants in their official capacities. It is apodictic that claims against an individual in his official capacity are to be treated as claims against the municipality. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other

than name, to be treated as a suit against the entity; it is not a suit against the official personally, for the real party in interest is the entity. *Id.*

Accordingly, I view the claims asserted against the individual defendants in their official capacities as redundant to the claims against the Town. *See Jeffes v. Barnes*, 20 F.Supp.2d 404, 410–11 (N.D.N.Y.1998) (collecting cases); *Snall v. The City of New York*, 1998 WL 960296, *3–*4 (E.D.N.Y. Dec.7, 1998). Thus, the official capacity claims against the individual defendants are dismissed.

### 5. Pendent State–Law Claims

Pursuant to 28 U.S.C. § 1367(a), the exercise of supplemental jurisdiction over state-law claims is appropriate "in any civil action of which the district courts have original jurisdiction," and wherein the state claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1990 & Supp.). A district court, however, "may decline to exercise supplemental jurisdiction over a claim" for any one of four enumerated exceptions set forth in the statute. 28 U.S.C. § 1367(c).

In this case, because no federal claims are actionable against defendants Fuller, Welt, Hodom, Wiggan, Lewis, Morgan, O'Brien, I decline to exercise supplemental jurisdiction over the state-law claims against them. *See* 28 U.S.C. § 1367(c)(2)(3) and (4); *Hoffman v. County of Delaware*, 41 F.Supp.2d 195, ——, 1999 WL 137864, *16 (N.D.N.Y.1999); *Dietrich v. Bauer*, —— F.Supp.2d ——, ——, 1999 WL 126438, *32 (S.D.N.Y. March 10, 1999). I will, however, exercise supplemental jurisdiction over any of plaintiff's state law claims against the remaining defendants. *See Dietrich*, —— F.Supp.2d at ——, 1999 WL 126438, at *32.

### III. CONCLUSION

For the reasons stated above, I grant in part and deny in part defendants' mo-

tions for summary judgment as follows: (1) all official capacity claims against the individual defendants Fuller, Welt, Hodom, Wiggan, Lewis, Morgan, O'Brien, and Flanigan are dismissed; (2) all personal capacity claims against the individual defendants Fuller, Welt, Hodom, Wiggan, Lewis, Morgan, and O'Brien are dismissed; and (3) all federal claims against defendant Flanigan in his personal capacity are dismissed—except that plaintiff's claim of selective enforcement stands.

**IT IS SO ORDERED.**